**GENERAL EXTRUSIONS, INC., Plaintiff-Appellant, v. AMERICAN SURETY COMPANY OF NEW YORK, Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 4026. Decided April 1, 1959.

Nadler & Nadler, Youngstown, for plaintiff-appellant.

William E. Pfau, William E. Pfau, Jr. Youngstown, for defendant-appellee.

## OPINION

By PHILLIPS, J.

Defendant, called surety, bonded plaintiff corporation, called Extrusions, owned solely by Fred F. and Alice M. Schuler, called owners, against any loss of money or other property, including inventory, sustained

"through any fraudulent or dishonest act or acts committed by any one or more of its employees."

On August 31, 1954, the owners agreed to sell and subsequently sold to Ace Industries Company, called Ace, all Extrusions' outstanding capital stock for $146,330.99. The terms of sale were $10,000.00 in cash and the balance in equal installments in thirty, sixty, ninety and one hundred eighty days from the date of the execution of the agreement. By the terms of this agreement owners sold 1328 shares of their stock to Ace and the balance of 772 shares were subsequently purchased by Extrusions through the action of the new shareholders of the company. In return for the shares of stock subsequently purchased by Extrusions the owners received accounts receivable and an income tax refund claim belonging to the corporation. Part of these assets were also transferred to Fred G. Schuler to repay a loan he had made to the corporation, in the sum of $56,000.00.

The first two installments were paid by Ace from moneys advanced to them by Extrusions through its managing employees, Swartswelter, Jr., President, and Raub, Secretary, referred to as management or called by their respective names.

While employed by Extrusions yet Swartswelter and Raub continued as president and treasurer and vice president of Ace respectively.

After the sale of Extrusions to Ace, Swartswelter, Jr., was authorized to sign checks at Mahoning and Union National Banks without evidence of authority by resolution of the board of directors.

There is evidence that Swartswelter drew checks for advances or loans not authorized by the corporation's articles of incorporation to the amount of $58,700.00, all of which checks excepting one for $3,000.00 and one for $665.39 in payment of an indebtedness to Fasform, Inc., were endorsed by Ace.

Also there is evidence that Swartswelter, Jr., and Raub sold some of Extrusions' merchandise to Ace between September 9, 1954, and December 16, 1954 none of which were paid for. There is also evidence that certain of the saleable inventory and merchandise produced by Extrusions for sale to its customers were sold at scrap prices, at a loss to it of $7,315.55.

On December 20, 1954, after Ace had defaulted in the payment of the note to owners due December 1, 1954, and plaintiff had been placed in a position where it could no longer pay its obligations in the ordinary course of busines, and incidentally, after actual control and management of Extrusions had been taken away from Swartswelter, Jr., by plaintiff's shareholders, Ace agreed to rescind the sale and return Extrusions' shares of stock to the former holders.

The question presented to the trial judge, sitting as trier of the facts by waiver of jury, in Extrusions' action to recover for the amount of its losses was whether the acts of Swartswelter, Jr., and Raub were "fraudulent or dishonest" acts, as that term is used in the fidelity bond.

Surety claims the question now presented is: "Whether advancements made by a wholly owned subsidiary corporation to its parent corporation constitute fraudulent and dishonest acts on the part of the

## 54

officers of the subsidiary corporation within the terms of the defendant's bond."

By journal entry the trial judge found inter alia:—

"That the said E. E. Swartswelter, Jr., and Harry M. Raub did not conspire to defraud, dissipate and divert the assets and property of the plaintiff to the direct and undivided use or benefit of either or both of them, or to the benefit or use of Ace Industries, Inc.;

"And did not by fraud, deceit and trick divert, take away, misapply or misappropriate money, credits and inventory of the plaintiff for the direct or indirect use and benefit of themselves or either of them, or The Ace Industries, Inc.;

"That E. E. Swartswelter, Jr., and Harry M. Raub did not wrongfully withdraw funds of the plaintiff for their direct or indirect use or benefit of either or both of them;

"That E. E. Swartswelter, Jr., and Harry M. Raub did not conspire to defraud the plaintiff by or through the sale of aluminum extrusions to Ace Industries, Inc.;

"That E. E. Swartswelter, Jr., and Harry M. Raub did not conspire to defraud plaintiff by the sale of good and salable inventory as scrap;

"That neither E. E. Swartswelter, Jr., nor Harry M. Raub was guilty of fraud or dishonest acts causing loss to the plaintiff;

"That there was a failure of proof of the allegations set forth in the plaintiff's petition against the defendant herein so that the defendant herein is entitled to a judgment in this court in its favor.

"* * * that judgment be, and is hereby entered in favor of the defendant and against the plaintiff herein, and further that judgment be entered in favor of the defendant and against the plaintiff for all incident court costs."

By assigned grounds of error Extrusions contends that the trial court erred in considering matters irrelevant to the issues in arriving at its findings and judgment; that the trial court's findings and judgment were contrary to law; and claims error in the overruling of the motion for new trial; and contends there are "other errors apparent upon the face of the record."

The term "fraud" cannot be defined positively. See 24 O. Jur. (2nd), 620.

In Vance v. Park, 7 Ohio Decisions 564, at page 569, it is stated:—

"Courts· have never laid down, in a general proposition, what does and what does not constitute fraud, nor any general rule by which they are controlled in giving relief, lest other means of committing fraud should be restorted to."

As stated in the case of World Exchange Bank v. Commercial Casualty Co., 255 N. Y. 1; 173 N. E. 902 at page 903:—

"Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract."

While there was a possible want of good judgment resulting in financial loss to Extrusion, we cannot under the facts of the case we review and the law as superior courts have spelled it out for us catalog the actions of Swartswelter, Jr., and Raub while acting in a fiduciary capacity "fraudulent and dishonest" so as to bind the surety.

Hindsight is easier than foresight and had Swartswelter and Raub known in September what they did in December undoubtedly their actions would have been different.

Extrusions sold salvage to raise money. Ace and Extrusions and their respective officers were fully informed at the time the transactions took place as to the loans and the sale of the personal property to Ace. Under these conditions we do not understand how the parties could defraud themselves.

All things considered we cannot reverse the judgment of the trial court on any of the grounds urged by Extrusions.

The judgment of the court of common pleas is affirmed.

GRIFFITH, PJ, DONAHUE, J, concur.