The **SHEET METAL AND ROOFING CONTRACTORS' ASSOCIATION OF the MIAMI VALLEY, OHIO**, et al., Plaintiffs,

v.

Marcus M. **LISKANY** et al., Defendants.

Civ. No. 4143.

United States District Court, S. D. Ohio, W. D.

Jan. 25, 1974.

Armistead W. Gilliam, Jr., Dayton, Ohio, for plaintiffs.

Leo F. Krebs, Dayton, Ohio, for Aetna & Travelers.

Charles D. Lowe, Dayton, Ohio, for Liskany.

## OPINION AND ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court for final determination on cross-motions for summary judgment pursuant to Fed.R. Civ.P. 56. Both sides have submitted an Agreed Statement of Facts, numerous exhibits, and memoranda of law in support of their respective motions for summary judgment. The Court has duly considered the above-mentioned submissions [1] and since it finds no genuine issue of material fact, has reached its conclusions of law as required by Rule 56. The jurisdiction of this Court is found by way of Sections 301 and 302 of the Labor Management Relations Act

---

1. The schedule for submission of original response and reply briefs, as ordered by the Court on June 6, 1973, required that reply briefs be tendered by September 22, 1973. The Court notes that defendant's brief of September 22, 1973, is properly characterized as both a response and reply brief. Accordingly, the Court finds that defendant's brief was proffered in a timely manner since it was, in part, a reply brief. Further, the interests of fairness and equity suggest that the portions characterized as "response" portions of the brief of September 22, 1973, should be considered as well, since they were submitted as part of the entire brief document and since the Court's final cut-off briefing date was observed.

of 1947, as amended, 29 U.S.C. §§ 185–86 (1970).

The history of the instant action began with the creation of a pension and a welfare plan designed to benefit union employees of employer-members of the Sheet Metal and Roofing Contractors' Association of the Miami Valley, Ohio. The Contractors' Association is a non-profit Ohio corporation formed to conduct collective bargaining and to serve as a trade association for its members, who may be generally described as companies involved in the sheet metal, roofing, and waterproofing business in the Dayton, Ohio area.

Eight members of the Sheet Metal and Roofing Contractors' Association [hereinafter referred to as "Contractors' Association"], named as plaintiffs in the original complaint, employ members of the International Association of United Slate, Tile and Composition Roofers, Damp and Waterproof Workers, AFL–CIO, Local 75 [hereinafter referred to as the "Union"], defendants herein.

Pursuant to the collective bargaining agreement of March 20, 1970, between the Contractors' Association and the Union, two funds were established for the sole and exclusive benefit of Union members of Local 75 and employees of the respective funds. The Pension Trust Agreement [hereinafter referred to as "Pension Fund"] provided pension benefits while the Welfare Trust Agreement [hereinafter the "Welfare Fund"] provided health and welfare benefits. Both funds were incorporated as part of the collective bargaining agreement by Section 8a of that agreement. Each fund was administered by six trustees, three of whom were appointed by the Union ["Union Trustees"] and three of whom were Association or employer trustees ["Employer Trustees"]. Each fund entered into indemnity bond agreements. The Pension Fund was insured by the Aetna Casualty & Surety Company ["Aetna"] with an indemnity coverage of $15,000 and the Welfare Fund by the Travelers Indemnity Company ["Travelers"] with indemnity coverage of $15,000.

Each fund was indemnified for losses caused by failure of fund employees to discharge properly their duties in handling funds. Losses occurred in both funds and plaintiffs seek recovery from the defendants for activities of defendants Richard C. Malone, Marcus M. Liskany, and Shirley J. Bennett. The plaintiffs seek an accounting and recovery of these losses only from defendants Liskany, Bennett, Union Local 75, Travelers and Aetna.[2]

It has been stipulated by the parties that: (1) defendants Liskany and Bennett were employees of the Pension and Welfare Plans while defendant Malone was not; (2) all trustees of the Welfare and Pension Funds are covered by the term "employee" in the two bond indemnification agreements; (3) the activities of defendants Bennett and Liskany causing losses to the Pension and Welfare Funds were within the coverage of the bond indemnification agreements with Aetna and Travelers; (4) that certain of such activities of defendants Liskany and Bennett were discovered on or before January 19, 1970, by the Pension and Welfare Fund Trustees; (5) that other of such activities of defendants Liskany and Bennett involving a real estate transaction[3] were discovered by the trustees of the Pension and Welfare Funds on or before October 14, 1971; and (6) that proof of these losses was not given to Aetna by the Pension Fund or to Travelers by the Welfare Fund within four months of discovery.

The Contractors' Association, its individual members, and three Employer-Trustees of the Welfare and Pension Funds instituted this action on October

---

2. The original complaint also named Clifford Neitman and Charles Dorsey, Sr. as defendants "solely because they are necessary parties" and did not seek recovery against them.

3. This transaction involved property located at 3660 El Paso Avenue, Dayton, Ohio.

21, 1971, to recover for the losses caused by defendants Liskany, Malone and Bennett. Defendants Bennett and Malone were added as parties by the first amended complaint of March 14, 1972; defendants Aetna and Travelers Insurance Companies were added as parties by the second amended complaint on March 23, 1973, pursuant to the Order of this Court.

The resolution of this action turns upon the construction of and effect given to the provisions in each of the two bond agreements concerning notice of loss, proof of loss, and contractual limitations of time within which legal action may be instituted by the two funds or its Employer-Trustees.

The Pension Fund Agreement with Aetna, in pertinent part, states as follows:

Section 5. Upon knowledge of discovery of loss under this bond, the insured shall: (a) give notice thereof as soon as practicable to the Underwriter; and (b) file detailed proof of loss, duly sworn to, with Underwriter within four months after the discovery of loss.

Upon the Underwriter's request, the Insured shall produce for the Underwriter's examination all pertinent records, at such reasonable times and places as the Underwriter shall designate, and shall cooperate with the Underwriter in all matters pertaining to loss or claims with respect thereto.

No action shall lie against the Underwriter unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this bond, nor until ninety days after the required proofs of loss have been filed with the Underwriter, nor at all unless commenced within one year from the date when the Insured discovers the loss. If any limitation of time for notice of loss or any legal proceeding herein contained is shorter than that permitted to be fixed by agreement under any statute controlling the construction of this bond, the shortest permissible statutory limitation of time shall govern and shall supersede the time limitation herein stated.

Similarly, the Welfare Fund Agreement with Travelers states, in pertinent part:

Section 8. Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the Insured shall: (a) give notice thereof as soon as practicable to the Company or any of its authorized agents and, except under Insurance Agreements I and V, also to the police if the loss is due to a violation of law; (b) filed detailed proof of loss, duly sworn to, with the Company within four months after the discovery of loss.

Proof of loss under Insuring Agreement V shall include the instrument which is the basis of claim for such loss, or if it shall be impossible to file such instrument, the affidavit of the Insured or the Insured's bank of deposit setting forth the amount and cause of loss shall be accepted in lieu thereof.

Upon the Company's request, the Insured shall submit to examination by the Company, subscribe the same, under oath if required, and produce for the Company's examination all pertinent records, all at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to loss or claims with respect thereto.

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, nor until ninety days after the required proofs of loss have been filed with the Company, nor at all unless commenced within two years from the date when the Insured discovers the loss. If any limitation of time for notice of loss or any legal proceeding herein contained is shorter than that

permitted to be fixed by agreement under any statute controlling the construction of this Policy, the shortest permissible statutory limitation of time shall govern and shall supersede the time limitation herein stated.

It is not disputed that Liskany was a covered employee nor that his activities caused loss; rather defendants Aetna and Travelers deny liability for failure to comply with conditions precedent to recovery stated in the indemnity agreements. The two Boards of Trustees, in January of 1970 and in July of 1971, had discovered the losses caused by unauthorized expenditure by defendants Liskany and Bennett. Each elected not to give notice of loss to the indemnity corporations but rather to accept a personal promissory note from Liskany as repayment. [See Exhibit E annexed to plaintiff's motion.] Notice of loss was not given until January 7, 1972.

■ This Court finds that the Boards of Trustees did not proffer the required notice of loss and proof of loss within the time required by the indemnity bond agreements. Both bond agreements required the insured to give notice of discovery "as soon as practicable." The insured funds are represented by their agents, the two Boards of Trustees and Fund Officers, and those agents were responsible for giving notice to Aetna and Travelers. "As soon as practicable" is but another means of expressing that notice must be given within a reasonable period of time. Nationwide Mut. Ins. Co. v. Motorists Mut. Ins. Co., 116 Ohio App. 22, 186 N.E.2d 208 (1961). The notice of loss by the Pension and Welfare Funds was made to both Aetna and Travelers on January 7, 1972 (Stipulation A–8). Furthermore, proof of loss was not filed by either fund until four months after the discovery of the loss (Stipulation A–6).

■ The Court holds that, under the facts of this case, neither two years (January 19, 1970—January 7, 1972), nor six months (July, 1971—January 7, 1972), is "as soon as practicable" for notice of discovery of loss. National Union Fire Ins. Co. v. Fannin, 257 F.Supp. 1017 (S.D.Ohio 1966); Shouse v. Indiana Lumbermens' Mutual Ins. Co., 254 F.Supp. 989 (S.D.Ohio 1964), aff'd, 361 F.2d 969 (6th Cir. 1966); Kornhauser v. National Security Co., 114 Ohio St. 24, 150 N.E. 921 (1926). Further, proof of loss was admittedly filed out of time. Since the parties had agreed in the two indemnity contracts that notice of loss and proof of loss were conditions precedent to recovery of indemnification, plaintiffs herein may not, as a matter of law, recover from the defendant insurance companies by way of these two indemnity contracts.

Plaintiffs, however, have asserted two alternative theories for recovery in its motion for summary judgment. Plaintiffs first argue that the Pension and Welfare Funds may be indemnified for their losses because the trustees of each fund failed to comply with the conditions precedent found in the indemnity agreements. Plaintiffs characterize this failure as a breach of trust by fund fiduciaries, which would allegedly be indemnifiable under the bond agreements. Second, plaintiffs assert a breach of trust by the trustees in failing to exercise reasonable care in preventing Liskany, a co-trustee, from causing losses to the Funds.

The Pension Fund trustees were given full authority to "compromise, arbitrate, settle, adjust or release" any claims owed to the Fund (Stipulation Exhibit B, Article VI, Section 2(d)) and were given all powers necessary to discharge these duties for the "sound and efficient administration of the Pension Funds." (Stipulation Exhibit B, Article VI, Section 2(k)).[4] The Welfare Fund trustees

---

4. Article IX, Section 2, has the common provision insulating trustees from personal liability for any error of judgment or any acts or omissions in the administration of the Pension Fund. This, however, is not pertinent in the instant case since the indemnity companies, not the trustees, are party defendants.

had similar powers to administer the trust fund and "to decide any dispute arising thereunder" (Stipulation Exhibit A, Article V, Section 5.1).[5]

The Aetna-Pension Fund Agreement provides indemnification for losses caused by "the failure of any of the employees covered hereunder, acting alone or in collusion with others, to discharge faithfully his duties in handling funds or other property as prescribed by law or by the Constitution and By-Laws . . . of the Insured, or by resolution of the Insured's governing body adopted thereunder." (Stipulation Exhibit C). The Welfare Fund—Travelers Bond Agreement indemnifies the Fund for losses caused by "fraudulent or dishonest acts of any Employee." (Stipulation Exhibit D).

■■■ The Pension Fund trustees had a choice in January of 1970 and in July of 1971. They could either settle or compromise the claims against Liskany through private means or they could notify the indemnity insurance companies. The trustees chose the former method and exacted a personal promissory note from defendant Liskany as repayment for his unauthorized expenditures. Their choice was but one of two alternatives and was not, in any sense, wrongdoing in and of itself. Further, their action was in strict accord with their duties and powers as specified in the Pension and Welfare Agreements between the Contractors' Association and the Union. Such a course of action is neither negligent or so lacking in prudence as to constitute a breach of trust on the part of the trustees. General Extrusions, Inc. v. American Surety Co., 83 Ohio Law Abst. 52, 167 N.E.2d 367 (1960). This Court cannot substitute its judgment on business matters for that of the trustees, absent any fraud or extreme negligence. Neither has any evidence been adduced in this action even suggesting a neglect of duties insofar as Liskany's actions are concerned.

■ Plaintiffs' contention that` the Pension Fund Trustees breached ·their fiduciary duties and thereby also caused losses to the funds, indemnifiable as failure to "faithfully discharge their duties," is without merit since this Court holds that the Pension Trustees committed no breach of trust. The Court reaches the same conclusion as above set forth concerning the Welfare Fund. The Welfare Fund Trustees did not commit any breach of trust when they elected to secure a promissory note from Liskany for the losses he caused or for any other actions they took. In addition, the Welfare Fund—Travelers Bond Agreement indemnifies the fund only for fraud or dishonesty, not for mere breaches of trust by Trustees. A mere breach of trust such as that allegedly committed by the trustees in this case is insufficient to qualify as a dishonest or fraudulent act. "[M]ere negligence, mistake or error in judgment does not constitute 'fraud' or 'dishonesty' within the terms of a fidelity bond." 35 Am. Jur.2d, Fidelity Bonds and Insurance, § 23 at 518.

The terms of the bond agreements preclude suit by the Pension Fund or its representatives after one year from the time of the insured's discovery of loss. Both contracts commence this limitation period from the discovery of loss, not when notice of loss is given. The exhibits and stipulations of the parties are clear that the Pension and Welfare Funds discovered some losses by January 19, 1970, and others related to real estate in July, 1971. The action was not filed against Aetna and Travelers until March 23, 1973. The action against Aetna was, therefore, filed out of time pursuant to ˙the bond agreement even if the conditions precedent concerning notice of loss were, in fact, satisfied. 30 Ohio Jur.2d, Insurance, §§ 959, 961. The situation of the Welfare Fund is somewhat different. The Welfare Fund-Travelers contract allows a two-year limitation period for filing of suit.

---

5. The Welfare Fund Trustees were also not personally liable for any acts or omissions made in good faith. (Stipulation Exhibit A, Article V, Section 5.12(a)).

The same bar nevertheless arises since the filing of suits for recovery against Travelers was contractually dependent on satisfaction of all conditions precedent. *Id.* The Welfare Trustees also discovered losses by January 19, 1970, and by July, 1971, for the real estate transaction. Notice of loss was not given "as soon as practicable" since the Welfare Fund gave Travelers notice of loss on or about July 7, 1972, and proof of loss was not furnished within four months of discovery of the loss.

█ Plaintiffs also argue that the trust funds themselves, as the named insured parties in the bond agreements, had no actual knowledge of the losses and therefore, notice of loss was timely when given by those funds to the insurance companies. Apparently, plaintiff is relying on the theory of agency law that when an agent is acting adversely to the interests of his principal, knowledge of the agent is not imputed to the principal. *See* 30 Ohio Jur.2d, Insurance, § 714. However, this rule of agency law is not generally accepted in the area of fidelity bonds nor is it supported by the facts of this case. 35 Am.Jur.2d, Fidelity Bonds, § 60 at 548; 23 A.L.R.2d 1080. The trustees here were not in any fashion acting adversely to the interests of their principal, the two Trust Funds. Rather, they sought, in the exercise of prudent business judgment, to recover the losses caused by Liskany by independent means of a promissory note. Since the trustees committed no breach of trust and were acting solely in the interests of the Trusts, the rule of agency law concerning imputation of knowledge from an agent acting adversely to his principal has no application in this case. Rather, the general principle that knowledge of an agent is imputable to his principal is applicable here. American Surety Co. v. Pauly, 170 U.S. 133, 18 S. Ct. 563, 42 L.Ed. 987 (1888); Kornhauser v. National Security Co., *supra*; First National Bank of New Bremen v. Burns, 88 Ohio St. 434, 103 N.E. 93 (1913). *American Surety* is particularly inapposite to plaintiff's contention since that case focused on the absence of an express agreement in the bonding agreement whereas in the case at bar, the bond agreements specifically provide that knowledge possessed or discoveries made by officers or trustees of the insureds shall constitute knowledge possessed or discovery of the insured itself. (Stipulation Exhibit C, ¶ B and Stipulation Exhibit D, ¶ B).

█ Plaintiffs also contend that the insurance companies made certain representations to plaintiffs which caused the plaintiffs to delay giving notice and filing suit. The facts of this case indicate that it was plaintiff, not the defendants, who permitted lapse of time for notice of loss, proof of loss, and filing of suits. Furthermore, acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the indemnity policy, rather than after such limitations have run. Such a waiver or estoppel situation will not be related back where the time limitation has lapsed. Metz v. Buckeye Union Fire Ins. Co., 104 Ohio App. 93, 147 N.E.2d 119 (1957). Discovery of loss giving rise to this litigation occurred in January, 1970, and July, 1971. Defendant insurance companies were noticed on July 7, 1972, by letter of counsel. Notwithstanding the fact that plaintiff's suit against Travelers would be timely if plaintiffs had met the conditions precedent for bringing such an action, the doctrines of waiver and estoppel are inapplicable on the facts of this case. The insurance company must have performed some act which in and of itself prevents a plaintiff from seeking a remedy in the court; mere conversation, negotiation or discussion is not sufficient unless it deterred plaintiff from his chosen course of action and misled him to the extent that it delayed filing of suit until the limitation period had terminated. Blanton v. Northwestern Insurance Company of Milwaukee, Wisconsin, 335 F.2d 965 (9th Cir. 1964); 30 Ohio Jur.2d, Insurance, § 967. No such evidence exists here.

In accordance with the foregoing, the Court finds:

1. The Trustees and Officers of each fund had knowledge of the loss sustained by each in January, 1970, and July, 1971.

2. The knowledge of such Trustees and Officers is imputable to the funds.

3. The funds failed to comply with conditions precedent in the indemnity agreements.

4. The Trustees committed no breaches of trust.

Accordingly, there being no genuine issues of material fact concerning the foregoing, plaintiffs cannot recover from defendants as a matter of law.

The motion of defendants Aetna and Travelers for summary judgment is hereby granted, and the motion of plaintiff for summary judgment is hereby denied.

The parties are directed to submit to the Court within ten (10) days of the date of this Opinion and Order a Judgment Order consistent with the foregoing.

It is so ordered.