**Shirley J. THOMAS, Plaintiff–Appellant,**

**v.**

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

No. 91–4184.

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1992.

Decided Aug. 31, 1992.

look to state law. See generally *State Land Bd.,*

429 U.S. at 378–81, 97 S.Ct. at 590–91.

Kreig J. Brusnahan, Stanley Morganstern (briefed), Lynn B. Schwartz (argued), Cleveland, Ohio, for plaintiff-appellant.

Richard D. Sweebe (argued and briefed), Ulmer & Berne, Cleveland, Ohio, for defendant-appellee.

Before: MARTIN and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

This dispute involves a claim by plaintiff, Shirley J. Thomas ("Thomas"), against her insurance carrier, Allstate Insurance Company ("Allstate"), for damages caused by two fires that destroyed her home in Vermilion, Ohio, a town of 11,000 population. Both of the fires, each of strongly suspected incendiary origin, occurred six days apart in January of 1990. Allstate conducted an investigation and learned that it was likely that the damaging fires were of incendiary origin, and that Thomas' son, Jerry, had been in the immediate vicinity at about the time of the second fire. It formally denied coverage in December of 1990 by reason of its suspicion that Thomas had caused the fires.

Thomas sued Allstate in February of 1991 in the Common Pleas Court of Erie County claiming $110,000 in damage to her home and $82,500 in damage to personalty and for loss of use. Thomas also claimed $175,000 for defendant's breach of its policy and refusal to honor Thomas' claim, and $500,000 in punitive damages and fees.

The case was removed to federal court based upon diversity of citizenship.

It is undisputed that Thomas finished building the house in question in 1989. At that time, she was living there with her son, her son's wife, and their new baby. Shortly after Christmas of 1989, everyone living in the home moved to West Virginia with Bill Cain,[1] whom Thomas considered her "common law husband."

Thomas claimed that she had spent $110,-000 in building her home in Vermilion, yet upon its completion, she bought fire insurance with Allstate worth $85,000. Her later explanation was that this amount covered only the materials in the home. Within a month before the fires, she placed the home for sale and increased her insurance coverage to $110,000. The house was on low ground, and during construction it experienced drainage problems. Thomas disputed with her neighbor about the manner of correcting the drainage problem. She also had problems with the original contractor and fired him from the job before completion.

While Thomas had steady income, she was not free from debt. Her live-in son, Jerry, was on welfare and apparently had no other means of support during late 1989 and early 1990. In December, 1989, Bill Cain had been laid off and his unemployment benefits expired during the month of the final fire. In January, 1990, Thomas was making payments on two vehicles, totalling about $566, and either Thomas or Cain began making payments on a West Virginia home.

Cain testified that Thomas told him that it cost her between $95,000 and $100,000 to build the house in Vermilion, and he conceded that he told the investigating fire marshall that the figure was between $80,-000 and $95,000. The latter range is in conformity with the original insurance coverage. About her unemployed son, age nineteen, Thomas conceded that "Jerry is not real, real smart, he doesn't take in-

struction or whatever real well, so, and Jerry is real forgetful.... Jerry had gotten into a couple of fights at school and like that...."[2] Jerry's young wife was also unemployed, but Jerry denied that his mother was supporting him and his family.

Thomas had borrowed money to finish construction of the house in question, having previously taken out a loan to buy her brother's house in Vermilion for $50,000. The rental payment she received on her brother's former house concededly did not cover her costs in that house. She put the other property up for sale at about the time she moved to West Virginia for less than what she had paid for it. (At trial, Thomas was evasive about her asking price and the appraised price.) Thomas also conceded that there was a mechanic's lien outstanding on the house in dispute at the time of the fires.

Allstate moved for summary judgment, asserting that the breach of contract claim was barred by the policy's one-year time limitation, and that it was "reasonably justified" in denying Thomas' claim. The district court granted defendant's motion, and Thomas appeals, relying on a statutory limit for bringing the breach of contract claim, and claiming that there were genuine material issues of fact on her bad faith claim.

We review a grant of summary judgment *de novo*, and we recognize the "new era" standard for scrutinizing motions for summary judgment. *McAdoo v. Dallas*, 932 F.2d 522, 523 (6th Cir.1991); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmovant, shows that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Phar-*

---

1. Cain kept clothes at the Thomas home before the move to his family's home territory near Buckley, West Virginia.

2. Thomas said Jerry had pleaded guilty in juvenile court for hitting or beating up a "kid," and was sent to a detention home.

*maceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

## I. LIMITATIONS BAR

■ Ohio Revised Code § 2305.06 (1991) provides:

Except as provided in section 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued.

Under Ohio case law, however, parties to a contract may agree to shorten the fifteen-year time limitation in which to sue, provided that the fixed period of limitation is reasonable. *Appel v. Cooper Ins. Co.*, 76 Ohio St. 52, 80 N.E. 955 (1907); *see also Colvin v. Globe American Casualty Co.*, 69 Ohio St.2d 293, 23 O.O.3d 281, 432 N.E.2d 167 (1982); *Hounshell v. American States Ins. Co.*, 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311 (1981). "To reduce the time for suit provided by the statute of limitations, an insurance policy must be written in terms that are clear and unambiguous to the policyholder." *Lane v. Grange Mutual Companies*, 45 Ohio St.3d 63, 64, 543 N.E.2d 488, 489 (1989).

■ The policy in question provided:
**15. Suit Against Us**
No suit or action may be brought against us unless there has been full compliance with all the policy terms. Any suit or action must be brought *within one year after the date of loss.*

(emphasis added). Thomas argues that the "time-to-sue" provision must be read in conjunction with another policy provision:

**Conformity to State Statutes**
When the policy provisions are in conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statute.

Thomas raises three arguments to avoid the contractual one-year limitation. First, she argues that because the "time-to-sue" provision conflicts with Ohio Rev.Stat. § 2305.06, then that provision must conform to the 15-year statute of limitations

pursuant to the "conformity" provision. Next, she claims that, due to the difficult "conformity" provisions quoted, the insurance policy is ambiguous as to the time limitation for suit. Finally, Thomas contends that the one-year time limitation in the contract is unreasonable.

The defendant responds that the contractual provisions, read in conjunction, are not "in conflict" and are not ambiguous. The defendant cites a Tennessee case involving the same policy provisions, *Smith v. Allstate Insurance Co.*, No. 92364–Q, 1987 WL 30150 (Tenn.Ct.App. Dec. 30, 1987), that decided this issue in favor of the defendant insurance company:

We find no merit to plaintiff's argument. While the limitation period as provided for in the policy is different from that provided for by the statutes of this state, they are not "in conflict." The law in Tennessee is simply to the effect that absent an agreement to the contrary, any aggrieved party has six years to sue for the enforcement of a contract.... Language pertaining to conformity is obviously in the insurance contract to accommodate any jurisdiction that may have a statutory provision prohibiting language in an insurance contract restricting the time in which suit might be filed.

*Smith*, slip op. at 2–3. Similarly, the defendant argues that the "time-to-sue" provision in this insurance contract is not "in conflict" with the statutory limitations period, since Ohio case law clearly allows parties to contract for a shorter time limitation.

We find the reasoning of the Tennessee court in *Smith* to be a proper resolution of the similar issues in this case. The "conformity" provision simply emphasizes that parties cannot contract to do that which the state legislature has forbidden. For example, as pointed out in *Smith*, if Ohio had a statute that clearly prohibited parties from shortening the time in which a party could bring suit on a contract, then any provision in the contract that purported to shorten a statute of limitations would be resolved in favor of the statutory limitation. *See Interstate Life & Accident Co. v. Hunt*, 171

Tenn. 119, 100 S.W.2d 987 (1937). Ohio does not have a statute that prohibits parties from contractually shortening the time to sue. On the contrary, "provisions limiting the time within which suit shall be brought are universally sustained by the courts...." *Appel,* 76 Ohio St. at 61, 80 N.E. at 958; *Bartley v. National Businessmen's Association,* 109 Ohio St. 585, 589, 143 N.E. 386, 387 (1924).

We further conclude that the insurance policy at issue is not ambiguous. The "conformity" provision is only applicable where the contract is "in conflict" with a state statute. Because the "time-to-sue" provision is not "in conflict" with Ohio Rev.Code § 2305.06 (or any other Ohio statute), the contractual one-year limitation operates to bar Thomas' action for breach of contract, unless the one-year limitation period is unreasonable.

■ In *Appel,* the Ohio court found that such contractual time limitation provisions were enforceable, "with the qualification only that [the] provisions and limitations must be reasonable." *Appel,* 76 Ohio St. at 61, 80 N.E. at 958; *Bartley,* 109 Ohio St. at 589, 143 N.E. at 387. Thomas argues that the "reasonableness" of the time limitation in this case is a question of fact for the jury, citing from *Order of United Commercial Travelers v. Duncan,* 221 F.2d 703, 707 (6th Cir.1955):

> Under Ohio law, "Ordinarily, an issue as to the reasonableness or unreasonableness of anything is regarded as a mixed question of law and fact for the determination of the jury, and is always so where reasonable minds may draw differing inferences from the facts in dispute." [citations omitted] If, then, a plaintiff suing in Ohio should contest the reasonableness of the six-month limitation in life insurance contracts as a matter of fact or should allege that extrinsic facts existed excusing delay in bringing the suit, and if these claims were contested as in the instant case, under the *Appel* case relevant issues of fact would be presented which the jury would have to determine.

This argument is an extension of Thomas' claim that the defendant effectively "waived" the contractual time limitation because of its delay in formally denying her claim. While the Ohio Supreme Court has held that "a limitation on periods for the commencement of actions to a period of 12 months is not unreasonable," the same court also stated that the insurance carrier may be estopped by its conduct from asserting the one-year bar, or it may be deemed to have waived the one-year bar. *Hounshell,* 67 Ohio St.2d at 430, 21 O.O.3d 267, 424 N.E.2d at 313.

The district court below found that the one-year limitation was reasonable as a matter of law, and that the manner of the defendant's investigation could not support a claim that Allstate had "waived" the limitation period. Waiver may occur "when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." *Hounshell,* 67 Ohio St.2d at 431, 21 O.O.3d 267, 424 N.E.2d at 314.

■ Thomas does not, however, point to anything that suggests that the defendant ever indicated any "recognition of liability" or ever induced, fraudulently or otherwise, Thomas to refrain from filing suit. The process of investigation in determining liability by an insurer does not constitute a waiver by that insurer. *Broadview Savings & Loan Co. v. Buckeye Union Insurance Co.,* 70 Ohio St.2d 47, 51, 24 O.O.3d 109, 434 N.E.2d 1092, 1095 (1982). The defendant sent a notice of denial to Thomas and to her attorney by certified mail on December 12, 1990. At no time thereafter did the defendant indicate any contrary intention. There was adequate time thereafter for Thomas to file suit.

Thomas has pointed out no genuine issue of material fact with regard to the defendant's waiver. "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other discovery devices], designate 'specific facts

showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Because Thomas does not support her "waiver" argument by pointing to a genuine issue of material fact, the grant of summary judgment on that issue was appropriate.

## II. THE BAD FAITH CLAIM

■ Thomas correctly points out that a cause of action in tort in Ohio arises when an insurer breaches its duty to the insured to act in good faith. This claim exists irrespective of the contractual liability, and the limitation period in the contract does not apply to such actions. *See Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 302–303, 525 N.E.2d 783, 788 (1988); *Plant v. Illinois Employers Insurance of Wausau*, 20 Ohio App.3d 236, 238, 200 OBR 297, 485 N.E.2d 773, 775 (1984). Once bad faith is established, punitive damages may be recovered upon a showing of malice, fraud, or insult by the insurer. *Hoskins v. Aetna Life Insurance Co.*, 6 Ohio St.3d 272, 276–277, 6 OBR 337, 452 N.E.2d 1315, 1320–1321 (1983).

■ The district court followed *Hoskins* in determining the appropriate standard of review for a "bad faith" claim:

Mere refusal to pay insurance is not, in itself, conclusive of bad faith. But when an insured [sic] insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, " ... such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish *reasonable justification* therefor." [quoting *Hart v. Republic Mutual Ins. Co.*, 152 Ohio St. 185, 188, 39 O.O. 465, 87 N.E.2d 347, 349 (1949)].

*Id.* (emphasis added); *see also Helmick v. Republic–Franklin Insurance Co.*, 39 Ohio St.3d 71, 76, 529 N.E.2d 464, 468 (1988) (approving *Hoskins*). The test, therefore, is not whether the defendant's

conclusion to deny benefits was *correct*, but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial. In the words of the district court, although "an arson defense is a question of fact, ... Allstate need only demonstrate that is was *reasonably justified* in denying the claim." (emphasis in original). The district court ultimately found that no genuine issue of material fact existed in this regard, and that the defendant's denial of coverage was reasonably justified.

■ Thomas claims that summary judgment on this issue was improper because whether good faith existed is a question of fact for the jury. Specifically, Thomas argues, the defendant did not show that the three elements of arson were present: "(1) fire of an incendiary origin; (2) motive on the part of the insured; and (3) opportunity of the insured to cause the fire." *Caserta v. Allstate Insurance Co.*, 14 Ohio App.3d 167, 169, 470 N.E.2d 430, 433 (1983).

As to the first element, Thomas virtually concedes that the fire was incendiary in origin. Her real contention is that there was neither motive nor opportunity for her to set the fire. The facts herein show that Thomas had a financial motive. She had exhausted her savings building the Ohio house and was pressed to help support her son and his family.[3]

With regard to opportunity, the defendant found that there was no evidence of forced entry when the house was burned. The defendant apparently theorized that Jerry Thomas, on behalf of his mother, could have caused the fires. Specifically, Jerry Thomas was suspiciously in the vicinity at the approximate time of the second fire. While visiting a friend, Jerry Thomas left his cousin's home to "get gas" at around midnight, and returned with a noticeable gasoline odor in his car. Jerry Thomas claimed that the versions of others about his activities the day before, and the

**3.** Although unemployed, Thomas receives $1,062 from her deceased husband's pension; $261.18 bi-weekly from her deceased husband's workers' compensation; $327.74 bi-weekly from her workers' compensation; and $450.00 monthly in rental income. At the same time, she was financially obligated.

night of, the fire were incorrect due to bias or dislike. We disagree.[4]

We are satisfied that there was no real issue as to the justifiable bias involved in the action of the insurance company in denying the claim under all the circumstances, taking into account the essentially undisputed factors recited.[5] The defendant's denial of Thomas' claim was "reasonably justified," and Thomas failed to present genuine issues with respect to any bad faith on the part of defendant.[6]

We AFFIRM, accordingly, the grant of summary judgment for the defendant.

---

4. The defendant's investigation revealed that in a previous car loss claim, the apprehended thief stated that Jerry Thomas had paid him $100 to steal and burn the car to recover the insurance proceeds.

5. Other than those factors specifically mentioned, the defendant found it significant that Thomas had increased her insurance on the house about one month before it was burned down. The Assistant State Fire Marshall told the defendant that Thomas' husband and son were trying to sell the house because of problems with construction. The defendant's investigation also revealed that Thomas stated that she would burn the "damn thing" if she had too many problems with the contractors or the drainage problems.

6. Because no bad faith was shown, Thomas' claim for punitive damages was properly denied.