FRIENDLY FARMS, Plaintiff–Appellant,

v.

RELIANCE INSURANCE COMPANY,
Defendant–Appellee.

No. 94–4166.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 13, 1995.

Decided March 29, 1996.

Before: WELLFORD, NELSON, and SUHRHEINRICH, Circuit Judges.

WELLFORD, J., delivered the opinion of the court, in which SUHRHEINRICH and NELSON, JJ., joined with NELSON, J. (pp. ——–——), also delivering a separate concurring opinion.

WELLFORD, Circuit Judge.

Plaintiff, Friendly Farms, Inc. ("Friendly Farms"), is a farming operation located on 371 acres in Harrison County, Ohio. In 1982,

Russell Merrin was hired to live on and manage the farm. In 1985, the Lewis Beckman Company ("LBC") involuntarily acquired ownership of Friendly Farms as the result of a foreclosure proceeding. LBC retained the services of Merrin, but did not execute a written employment contract with him. While Merrin was responsible for the daily affairs of Friendly Farms, Chester Anderson, an LBC board member and LBC's Corporate Controller, was ultimately responsible for overseeing the operation.

Merrin's duties included monitoring and expanding the cattle herd; renovating the farmhouse, farm buildings and equipment; maintaining the fields, lands, fences and fence lines; and attending to other matters normally associated with farming. In performing these duties, Merrin was authorized to make purchases of up to $1000 without prior approval,[1] to buy on LBC's credit, and to otherwise act on the company's behalf. In exchange for his services, Merrin received a monthly stipend and many fringe benefits including free lodging and utilities at the farmhouse; permission to grow his own crops, raise his own livestock and continue his feed business; and a right of first refusal in the event that LBC decided to sell the farm. Merrin filed tax returns indicating that he was a self-employed person and he paid self-employment taxes. LBC did not withhold FICA or federal taxes from Merrin's pay, issue him W–2 or 1099 forms, or allow Merrin to participate in its health care or pension plan.

In 1986, LBC purchased a Crime Insurance Policy from defendant, Reliance Insurance Company ("Reliance"). This policy provided coverage to LBC and Friendly Farms for losses resulting directly from "employee dishonesty." In the event of such a loss, the policy required LBC to submit a proof of claim to Reliance within 120 days and limited the period in which LBC could bring legal action against Reliance to twelve months.

In April 1990, LBC placed John Koren in charge of Friendly Farms. Shortly thereafter, Koren began reviewing the financial records which Chester Anderson had main-

---

1. Anderson admitted that Merrin sometimes made larger purchases without permission.

tained in connection with the operation. As a result, Koren came to suspect that cattle and equipment were missing from the farm, and he questioned certain reimbursements that had been made to Merrin. Thus, Koren went to the Scio Auction Barn on June 30, 1990 to review records pertaining to cattle sold by Merrin. These records revealed that Merrin had sold 105 cows for which LBC did not receive any of the proceeds. On July 3, Koren confronted Merrin with this information. Although Merrin denied any wrongdoing, he abruptly packed-up and left Friendly Farms.

On September 10, 1990, LBC notified Reliance that it might have a "potential claim" under the policy. After requesting and receiving an extension of time, LBC submitted its first sworn proof of loss, totalling $138,662, on February 25, 1991. At that time, LBC indicated that it felt "that there are other parts to this claim ... [that] we are unable to prove." The following April, LBC submitted an amended proof of loss in the amount of $306,176.

On June 10, 1991, Reliance's representative, Jacqueline Lewis, denied LBC's claim on the basis that Merrin was an independent contractor, not an employee as required by the policy.[2] In response to Lewis' letter of denial, LBC forwarded additional information for her review and enlisted an experienced insurance broker to aid in the presentation of its claim. In July, Lewis reaffirmed her initial denial of LBC's claim based on her continued belief that Merrin was an independent contractor. Despite these denials, Reliance continued to investigate LBC's claim.

In August 1991, LBC representatives met with Lewis to discuss the issue of Merrin's employment status and other problems regarding LBC's claim. In early September, Vincent Fasano, a Reliance vice president, informed LBC that the insurance company remained unconvinced that LBC had a valid claim, but Fasano added: "Reliance will go forward with its planned meeting with Mer-

rin on September 27, 1991, and will make a settlement offer [to LBC] shortly thereafter." On September 23, LBC filed its final amended proof of loss in the amount of $455,934.

On October 10, 1991, after meeting with Merrin, Lewis conveyed an offer to settle LBC's claim for $100,000.[3] Lewis' letter stated that the offer was for settlement purposes only and that all rights and defenses were reserved. LBC rejected the proposed settlement and filed suit against Reliance in Ohio state court on October 28, 1991, alleging breach of contract and bad faith. Reliance subsequently removed the action to federal district court and moved for summary judgment, contending that Merrin's employment status precluded coverage under the policy. The district court, finding genuine issues of material fact, denied the motion. Thereafter, Reliance again moved for summary judgment, this time on grounds that LBC's breach of contract action was barred by a twelve-month limitations provision in the policy and that no genuine issue of material fact existed as to LBC's allegations of bad faith. The district court granted this motion and LBC perfected this timely appeal.

### I.

We review *de novo* a district court's grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *City of Mount Clemens v. United States Envtl. Protection Agency*, 917 F.2d 908, 914 (6th Cir.1990). Summary judgment is appropriate if there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). A "genuine issue" arises when the record, taken as a whole, could lead "a rational trier of fact to find for the nonmoving party." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106

---

**2.** In an internal memorandum dated July 1, 1991, Lewis opined that the issue of whether Merrin was an independent contractor was a "close question on these facts, but one that results, all things considered, in a finding of independent contractor status."

**3.** The "real cash" value of this offer was only $50,000 since half of the total amount was to be allocated to LBC's deductible.

S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In making its analysis, this Court assesses the record "in the light most favorable to the non-movant, drawing all reasonable inferences in its favor.... The non-movant, in order to prevail, however, must show sufficient evidence to create a genuine issue of material fact." *Klepper v. First Am. Bank,* 916 F.2d 337, 341–42 (6th Cir.1990).

## II.

The primary issue before us is whether the district court erred in finding LBC's breach of contract claim to be barred by the policy's limitations provision. That provision states:

> **Legal Action Against Us:** *You* may not bring any legal action against us involving loss:
>
> a. Unless *you* have complied with all the terms of this insurance; and
>
> b. Until 90 days after *you* have filed proof of loss with *us;* and
>
> c. Unless brought within 12 months from the date you discover the loss.

The district court held that LBC's claim was barred because the company "discovered the loss" caused by Merrin on June 30, 1990 (*i.e.,* the date that Koren visited the Scio Livestock Barn), but did not file suit until nearly sixteen months later. On appeal, LBC contends that trial court's discovery date finding was erroneous.

While the policy at issue does not define the phrase "discover the loss," we held in *Russell Gasket Co. v. Phoenix of Hartford Insurance Co.,* 512 F.2d 205 (6th Cir.1975), that under Ohio law, " 'discovery of loss' does

not occur until the insured has had a reasonable time to discover the extent and amount of the loss." *Id.* at 208 (citing *Wolinsky v. National Casualty Co.,* 124 Ohio St. 216, 177 N.E. 588, 589 (1931)). Based on *Russell Gasket Co.,* LBC argues that the district court erred in deeming discovery to have occurred on June 30, 1990, because LBC had not ascertained the "extent and amount" of the loss caused by Merrin at that time.

■ Before addressing the merits of LBC's contention, we must consider whether LBC has waived argument on this issue. Reliance asserts that such is the case because LBC failed to raise the discovery date issue in the court below and because LBC has admitted in its complaint,[4] answers to interrogatories,[5] and sworn proofs of loss[6] that the discovery date was June 30, 1990. We agree. LBC's sworn proofs of loss unequivocally state that "[t]he loss was discovered on June 30, 1990." While LBC attempts to argue that its judicial references to June 30 are only admissions that the company knew that it had some type of claim under he policy on that date, the proofs of loss speak for themselves.

■ More importantly, LBC's failure to raise the discovery date issue in the district court precludes argument in that regard on appeal. Issues not litigated in the trial court are generally inappropriate for appellate consideration in the first instance. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 243 (6th Cir.1991). Nevertheless, the foregoing rule is not absolute; as LBC points out,

---

**4.** LBC's complaint states, in pertinent part:

> 12. A June, 1990 inspection performed by [LBC's] agents revealed that over one hundred acres of the farmland had become overrun with multiflora rose, that fields and crops had gone untended and unfertilized for a significant period of time even though Merrin had been reimbursed for fertilizer which he had purported to purchase for use on the farm, that the farm equipment owned by Friendly Farms had not been properly maintained, and that fencing for which Merrin had been paid by [LBC] to install at Friendly Farms had never been actually erected.
>
> . . . .
>
> . . . .

> 15. [LBC's] investigation also revealed that 105 of its cattle were sold at auctions held in Scio, Ohio, without authorization....
>
> 16. The funds obtained from the unauthorized sales ... were never tendered to [LBC] or applied to [LBC's] benefit in any manner.

**5.** In response to Reliance's interrogatory regarding the date when LBC discovered the alleged loss, LBC stated that "its first notice of employee Russell Merrin's wrongdoing resulted after review of cancelled checks issued by the Scio Livestock Auction to employee Russell Merrin was performed by John Koren ... on or about June 30, 1990."

**6.** All three proofs of loss filed by LBC stated: "The loss was discovered on June 30, 1990."

this Court has discretion to entertain novel questions. The exercise of such discretion is guided by factors such as: 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court. *See id.* at 245. We have also held that we may exercise discretion to review an issue not presented to the district court in "exceptional cases." *Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir.1993); *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1461 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Upon considering the foregoing factors, we are disposed to believe that we should not exercise our discretion to consider the discovery date issue. A determination of when LBC "discovered" its loss would require reference to the underlying factual record. Furthermore, because LBC admitted below that the discovery date was June 30, 1990, we find nothing unjust about refusing to entertain the company's belated arguments to the contrary.[7]

█ Having determined that the discovery date issue is waived, we must address LBC's remaining contentions. LBC argues that, even if it is deemed to have discovered the loss on June 30, 1990, its breach of contract action is still timely because the twelve-month limitation period did not commence until ninety days after LBC filed its initial proof of loss on February 25, 1991. According to LBC, the policy must be interpreted in this manner in order to effectuate both the limitations provision and the provision prohibiting LBC from filing suit against Reliance for ninety days after filing its proof

of loss. This argument is meritless. Ohio law holds that contractual limitations provisions in insurance contracts commence the moment that the triggering event occurs, regardless of other policy provisions requiring that certain conditions be fulfilled before the insured has a right to enforce the contract. *See Appel v. Cooper Ins. Co.,* 76 Ohio St. 52, 80 N.E. 955, 957–58 (1907); *Plant v. Illinois Employers Ins.,* 20 Ohio App.3d 236, 485 N.E.2d 773, 774 (1984); *Kelley v. Travelers Ins. Co.,* 9 Ohio App.3d 58, 458 N.E.2d 406, 407 (1983).

█ LBC next contends that Reliance waived or is estopped from asserting the policy's limitations provision, because it continued to investigate and offered to settle LBC's claim after the limitations period expired on June 30, 1991. Again, we find no merit in LBC's position. Under Ohio law, waiver of the limitations provision in an insurance policy "may occur 'when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract.'" *Thomas v. Allstate Ins. Co.,* 974 F.2d 706, 710 (6th Cir.1992) (quoting *Hounshell v. American States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311, 314 (1981)). However, "acts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the ... policy, rather than after such limitations have run." *Metz v. Buckeye Union Fire Ins. Co.,* 104 Ohio App. 93, 147 N.E.2d 119, 121 (1957); *accord Sheet Metal & Roofing Contractors' Ass'n v. Liskany,* 369 F.Supp. 662, 668 (S.D.Ohio 1974). Furthermore, "[t]he process of investigation does not constitute a waiver by [the] insurer." *Thomas,* 974 F.2d at 710.

█ Finally, we reject LBC's allegations of bad faith. In Ohio, an insurer breaches its duty of good faith to its insured

---

7. We find LBC's reliance on *Wayne County Neighborhood Legal Services v. National Union Fire Insurance Co.,* 971 F.2d 1 (6th Cir.1992), to be misplaced. Unlike LBC, the *Wayne County* plaintiff made, at least to some extent, its position known to the district court. *See id.* at 3 n. 1. Moreover, LBC not only failed to offer any argument on the discovery date issue below, the company affirmatively indicated, by virtue of its proofs of loss, that June 30, 1990 was the appropriate discovery date. Finally, the discovery date issue, unlike the question raised by the plaintiff in *Wayne County,* is not purely one of law. *See id.* at 3 n. 2.

where "[the company's] refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397, 399–400 (1994). We find nothing in the record to suggest that Reliance lacked "reasonable justification" for denying LBC's claim. Rather, the evidence shows that the insurance company genuinely and reasonably concluded that Merrin's employment status placed his dishonest activities outside of the policy's scope of coverage.

Based on the foregoing, we **AFFIRM** the district court's grant of summary judgment to Reliance in all respects.

DAVID A. NELSON, *Circuit Judge,* concurring.

This is a close case, in my view, but I concur in the affirmance of the summary judgment and in the court's opinion explaining the affirmance. I wish to add a few words on the question that has been the most troubling one for me—the question whether the plaintiff has waived its argument as to the existence of a factual dispute over when the one-year limitations period began to run.

In pleading its limitations defense, Reliance pointed out that LBC's complaint alleged discovery of "at least some portion of the loss as early as June, 1990." Reliance went on to aver that "[t]he entire loss was discovered no later than September 10, 1990 when written notice of loss was tendered. . . ."

In its brief opposing summary judgment, LBC observed—accurately—that the notice tendered on September 10 was merely notice of a "potential claim." But the brief did not contend that there was a genuine issue as to when the entire loss was discovered or should have been discovered. Neither was such a contention advanced in the surreply brief containing LBC's final submission to the district court. What LBC contended, rather, was that the provisions of the insurance contract made cooperation in Reliance's investigation a condition precedent to the bringing of suit, and the length of the investigation rendered it impossible for LBC to meet the condition prior to October of 1991.

The district court did not find this contention persuasive, and neither do I.

The district court might have been more receptive to an argument that Reliance was not entitled to summary judgment because there was a genuine issue of fact as to whether LBC could reasonably have discovered the extent and amount of the loss before the end of October of 1990. Like my colleagues on the panel, however, I have been unable to find in the papers that LBC filed with the district court anything that could fairly be said to have brought this discovery date issue to the court's attention. It is not enough that the issue may have been implicit in what was presented; judges are not mind readers, and if LBC wanted the district court to consider a discovery date argument, it should have said so.