**Lee W. WHITE, Plaintiff–Appellant,**

v.

**SIMPSON INDUSTRIES, INC. Defendant–Appellee.**

No. 99–4182.

United States Court of Appeals, Sixth Circuit.

Jan. 12, 2001.

Before SUHRHEINRICH and MOORE, Circuit Judges; EDMUNDS, District Judge.*

PER CURIAM.

Plaintiff, Lee W. White, appeals the district court's grant of summary judgment in favor of Defendant, Simpson Industries, Inc. Plaintiff claims that Defendant terminated him in retaliation for his filing a workers' compensation claim. Because Defendant terminated Plaintiff due to its reasonable belief that Plaintiff sexually harassed other employees and Plaintiff failed to show that this reason for his termination was a pretext, we hereby AFFIRM.

## I.

Defendant is an automotive parts manufacturer in Edon, Ohio. Plaintiff was em-

---

* The Honorable Nancy G. Edmunds. United States District Judge for the Eastern District of Michigan, sitting by designation.

ployed as an hourly production employee at the Edon plant from December of 1993 until he was terminated in February of 1998. Plaintiff was represented by a union, the United Electrical, Radio and Machine Workers of America, Local 715.

Plaintiff had chronic employment problems. He was disciplined for absenteeism seven times between December of 1994 and August of 1997. In June of 1996, twenty-seven fellow union employees petitioned to remove Plaintiff from the union for "constantly causing trouble." Defendant also disciplined Plaintiff for sexual harassment. In December 1996, Plaintiff called a female co-worker, Colleen Brown, a "whore" and told her to "keep your fucking mouth shut." Defendant suspended Plaintiff for three days and gave him a written warning. Plaintiff grieved the discipline, which Defendant and Plaintiff's union settled. Defendant agreed to warn Plaintiff and to suspend Plaintiff for three days, while paying him for one. The warning provided:

> If at any time you are again either responsible for conduct of this nature or are involved in incidents of any kind in which this type of conduct is present or you retaliate in any way towards the employees involved in these incidents you will be subject to further disciplinary action, up to and including discharge.

Subsequently, on July 23, 1997. Plaintiff attended sexual harassment training at the Edon plant. Defendant's sexual harassment policy was distributed and discussed during the training. The policy defined sexual harassment as "unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature, which unreasonably interferes with an individual's work performance or creates an intimidating, hostile or offensive working environment." The policy stated that Defendant would discipline any employee who sexually harassed another.

In February of 1998, two more of Plaintiff's female co-workers filed sexual harassment claims against Plaintiff. On February 6, 1998. Tina Surfus complained to Joseph Magdy, Defendant's Human Resource Manager, that Plaintiff made repeated offensive comments about her weight. He stated. "Tina how skinny you got" She complained that she felt that he was making fun of the fact that she was overweight, and she submitted a written complaint on February 8, 1998.

Magdy investigated the Surfus complaint. During his investigation, Magdy discovered additional allegations of sexual harassment involving Plaintiff. Roxanne Turney, another female co-worker, complained in writing on February 8, 1998, that Plaintiff called her "thunder thighs" and that Plaintiff grabbed his crotch and asked her "[w]hy don't you come and give it to me here?" Turney also complained that Plaintiff repeatedly referred to "furmanda cheese" and putting that "cheese" on her lunch. Turney was informed by co-workers that the phrase referred to "fermion" or "pheromone" which purportedly refers to vaginal secretions during sexual arousal. Turney also complained that Plaintiff had asked Joe Steffes, another co-worker, when he was going to date her.

Just after Surfus and Turney complained about Plaintiff's harassment, on the morning of February 9, 1998. Plaintiff caught his glove in a machine at the plant and injured his hand. He completed a workers' compensation application and contacted OSHA on the day of the accident, and he completed an accident report with his supervisor, Dennis Kaizer, on February 10. He received workers' compensation benefits from February 12, 1998, to May 27, 1998, for the injury to his hand.

Magdy suspended Plaintiff on February 11, 1998, pending the investigation of the sexual harassment charges. Magdy interviewed all of the employees that Plaintiff identified as witnesses. Some of the incidents of harassment were corroborated. Employees verified that Plaintiff talked about "furmanda cheese," referred to "thunder thighs," and made comments to Joe Steffes about Turney. In addition, James Rhoades, a union steward, told Magdy that Plaintiff had harassed women for a period of time. Rhoades submitted a written statement that Plaintiff derided Surfus in front of other employees. After his investigation. Magdy terminated Plaintiff on February 18, 1998, for violating Defendant's sexual harassment policy. Although the union initially filed a grievance over Plaintiff's termination, it did not pursue the grievance to arbitration after investigating the claims.

As a result of his termination. Plaintiff brought this suit alleging retaliatory discharge due to his filing of a workers' compensation claim and wrongful discharge in violation of Ohio public policy. Defendant moved for summary judgment, and the district court granted the motion. The district court held that Plaintiff did not show that Defendant's reason for discharging him was pretextual, Defendant's investigation was adequate, and Plaintiff was not treated any differently that any other employee whom Defendant believed had sexually harassed another employee. Plaintiff appealed.

## II.

This Court's review of the decision to grant summary judgment is *de novo*. *See Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 543 (6th Cir.1996). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion. Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v.. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252.

## III.

 In order to show a prima facie case for retaliatory discharge under Ohio law, a plaintiff must demonstrate that he suffered a work-related injury, that he filed a claim for workers' compensation, and that the employer discharged him in violation of Ohio Revised Code section 4123.90.[1] *See Kilbarger v. Anchor Hock-*

---

1. Ohio Revised Code section 4123.90 pro- vides:

*ing Glass Co.,* 120 Ohio App.3d 332, 337–38, 697 N.E.2d 1080, 1083 (1997). The burden then shifts to the employer to show a legitimate, non-discriminatory reason for the discharge. Then, the burden shifts back to the plaintiff to establish that the reason for discharge was pretextual and that the real reason for the discharge was the employee's protected conduct, his filing of a workers' compensation claim. *Id.* at 338, 697 N.E.2d at 1083–84. "The scope of the cause of action created by the statute is very limited, and the burden of proof is upon the employee to specifically show that the termination was in direct response to the filing of a claim." *See Metheney v. Sajar Plastics, Inc.,* 69 Ohio App.3d 428, 432, 590 N.E.2d 1311, 1314 (1990). Further, "[t]he employee's evidence must do more than raise an inference of an improper motive." *Id.* at 431, 590 N.E.2d at 1313.

■ Here, Plaintiff has made out a prima facie case of retaliation. He injured his hand on the job, he filed a claim for workers' compensation, and ten days later he was discharged. Relying on *Hohn v. Deco Tools, Inc.,* 1987 WL 5554 (Ohio App. 6th Dist. Jan. 23, 1987). Plaintiff contends that the short length of time between his reported injury and his discharge establishes his retaliation claim. While the *Hohn* court found that the proximity in time between the filing of a workers' compensation claim or safety report and the adverse employment action can establish a prima facie case, the *Hohn* court also noted that the employer's legiti-

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because such employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

mate reasons for discharge can rebut the prima facie case. Defendant has rebutted Plaintiff's prima facie case by demonstrating a legitimate nondiscriminatory reason for discharge by submitting evidence that it discharged Plaintiff because he violated Defendant's policy against sexual harassment. The temporal proximity of the workers' compensation claim and the discharge do not rebut Defendant's legitimate reason for discharge.[2]

Plaintiff also claims that Defendant's reason for discharge was pretextual because Defendant cannot corroborate the complaints of sexual harassment. In evaluating whether a proffered reason for discharge is in fact a pretext, summary judgment is appropriate if the employer can show it reasonably relied on the known facts when it took the adverse employment action. *See Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir.1998). If the employer honestly believed in the nondiscriminatory reason it relied on in making its employment decision, and that honest belief was reasonably based on particularized facts and not based on ignorance or prejudice, then the employer lacked discriminatory intent. *Id.* at 806. Thus, even if Defendant was incorrect in its finding that Plaintiff sexually harassed fellow employees, this error does not constitute evidence of pretext because Defendant's reason for discharging Plaintiff was based on a reasonable and honest belief that Plaintiff was guilty of sexual harassment.

**2.** In addition, it should be noted that the only evidence of retaliation in this case is the temporal proximity between Plaintiff's workers' compensation claim and his discharge. There is no evidence that Magdy, the person who made the decision to fire Plaintiff, had any knowledge that Plaintiff had filed a workers' compensation claim. Plaintiff merely asserts that he filed an accident report with his immediate supervisor, Kaizer.

Defendant's Human Resource Manager, Magdy, investigated the complaints of sexual harassment and corroborated some of them. Employees verified that Plaintiff talked about "furmanda cheese," referred to "thunder thighs." and made comments to Joe Steffes about Turney. In addition, James Rhoades, a union steward, told Magdy that Plaintiff had harassed women for a period of time. Rhoades submitted a written statement that Plaintiff derided Surfus in front of other employees.

Plaintiff claims that the district court should not have considered Rhoades' written statement because is was not in the form of a sworn deposition or affidavit as required by Federal Rule of Civil Procedure 56(c). However, Plaintiff did not object below and thus this argument was waived. *First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1339 (6th Cir. 1987). *See also Molden v. Davey Tree Co.*, 1990 Ohio App. Lexis 3212, 1990 WL 115968 (Aug. 3, 1990) (trial court may consider documents outside of those identified in Fed.R.Civ.P. ·56(c) when no objection is raised).

Plaintiff also contends that the allegations of harassment were not sexual in nature and thus did not violate Defendant's policy against sexual harassment. He contends that some the alleged harassment focused on non-sexual topics, such as the women's weight. He also contends that "furmanda cheese" is a nonsense word with no meaning.

Even if some of the alleged harassing conduct was not sexual in nature, some of it was. Turney stated that Plaintiff grabbed his crotch and asked for sex. Plaintiff asked when Steffes was going to take Turney out. Even the comments, which were not overtly sexual, calling Surfus "skinny" and Turney "thunder thighs," could be considered sexual under some circumstances. The evidence shows that Defendant's termination of Plaintiff was based on its reasonable belief that Plaintiff repeatedly sexually harassed co-workers.[3]

Finally, Plaintiff claims that his termination was pretextual because a similarly situated male employee, Richard Caldwell, was not terminated for repeated sexual harassment of female employees. While both Caldwell and Plaintiff were initially disciplined after the first complaints of sexual harassment. Caldwell was not terminated like Plaintiff was when there was a second complaint of harassment. Plaintiff's claim of discriminatory treatment fails because Caldwell and Plaintiff were not similarly situated. The complaints regarding Caldwell's second alleged sexual harassment were not timely, they were two to three years old. As a result, Defendant was unable to corroborate the second complaint against Caldwell. In contrast, the second and third complaints against Plaintiff were timely and were partly corroborated.

In sum, although Plaintiff may have stated a prima facie case due to the temporal proximity of his workers' compensation

---

**3.** Note also that Plaintiff's definition of sexual harassment is too narrow. "[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). A plaintiff who alleges that she was subjected to a hostile work environment must show that the environment was so objectively offensive as to alter the "conditions" of the victim's employment. *id.*, and that she subjectively perceived the environment to be hostile. *See Williams v. General Motors Corp.*, 187 F.3d 553, 564 (6th Cir.1999). Further, the conduct underlying a sexual harassment claim need not be overtly sexual. *Id.* at 565. Harassing behavior that is not sexually explicit but that is based on an anti-female animus may constitute sexual harassment. *Id.*

468

claim and his termination, Plaintiff failed to rebut Defendant's proffered legitimate, non-discriminatory reason for terminating Plaintiff.

Plaintiff also contends that the case must be remanded because the district court did not consider Plaintiff's public policy claim. While the district court did not specifically analyze Plaintiff's public policy claim separately from his statutory claim, dismissal of the public policy claim was implied because the statutory claim and the public policy claim are factually and legally the same. Plaintiff claims that he was terminated in violation of a public policy prohibiting termination in retaliation for filing a workers' compensation claim.

■ To state a claim under Ohio common law for wrongful discharge in violation of public policy, a plaintiff must show (1) a clear public policy established by law; (2) dismissal of an employee in contravention of this law would jeopardize public policy; (3) the dismissal was motivated by conduct related to the public policy; and (4) the employer did not have a legitimate business justification for the dismissal. *See Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 151, 677 N.E.2d 308, 321 (1997). The third and fourth elements of a public policy claim are equivalent to the legitimate, non-discriminatory reason analysis for the statutory claim under Ohio Revised Code section 4123.90. As discussed above. Defendant had a reasonable basis to believe that Plaintiff violated its sexual harassment policy, and Plaintiff failed to rebut this legitimate, non-discriminatory reason for discharge. Thus, the district court properly dismissed Plaintiff's claim for wrongful discharge in violation of public policy.

Accordingly, we hereby AFFIRM.