**Richard GALLAGHER, Plaintiff–Appellant,**

v.

**CONTINENTAL AIRLINES, INC., Defendant–Appellee**

No. 00–4095.

United States Court of Appeals, Sixth Circuit.

April 10, 2002.

Before MARTIN, Chief Circuit Judge; GILMAN, Circuit Judge; and EDMUNDS,* District Judge.

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

PER CURIAM.

Plaintiff–Appellant Richard Gallagher ("Gallagher") appeals the district court's grant of summary judgment in favor of Defendant–Appellee Continental Airlines ("Continental"). Gallagher brought this claim in the district court alleging reverse race discrimination in violation of Ohio Revised Code ("ORC") § 4112. Gallagher also brought a claim alleging that Continental violated his due process rights by failing to follow company policy in terminating his employment. The district court granted Continental's motion for summary judgment with respect to both of Gallagher's claims. For the reasons set forth below, this panel **AFFIRMS** the district court's grant of summary judgment.

## I. BACKGROUND

Plaintiff–Appellant Richard Gallagher ("Gallagher") was employed by Defendant–Appellee Continental Airlines ("Continental") in the Department of Material Services at Cleveland Hopkins International Airport for eleven years. On September 16, 1998 Gallagher was involved in an incident with one of his coworkers, Tyrone Hood ("Hood") which culminated in Hood claiming that Gallagher had struck him in the face. Gallagher is Caucasian and Hood is African–American. Although Gallagher denied striking Hood, Continental's investigation resulted in a determination that Gallagher did strike Hood during this altercation. As a result of this incident, Gallagher's employment was terminated pursuant to Continental's "zero tolerance" policy for workplace violence.

On the morning of this altercation, Anthony Mazzolini ("Mazzolini"), manager of the Material Services Department in Cleveland, was sitting in his office when Hood ran in claiming that Gallagher had hit him in the face; Hood demanded that Mazzolini contact corporate security or the Cleveland police. *See* Mazzolini Deposition at 18–21; J.A. 773–776. Mazzolini noticed *that* the one of Hood's eyes was tearing and that his jaw appeared to be swollen. *See* Mazzolini Incident Report; J.A. 417–419.

At the time Hood entered Mazzolini's office, Gallagher followed just a few paces behind, and as Hood was telling Mazzolini that he had been struck and demanding that security be called, Gallagher was loudly protesting that he had done nothing. *See* Mazzolini Deposition at 45; J.A. 800. After contacting the police, Mazzolini telephoned Joe DeGennaro ("DeGennaro"), Human Resource Manager for Technical Operations for Continental, in his office in Houston. DeGennaro told Mazzolini to separate Gallagher and Hood, and to take statements from each of them. *See* DeGennaro Deposition at 9 & 14; J.A. 573–578.

Shortly after Mazzolini separated Gallagher and Hood, two Cleveland police officers reported to the scene. They completed a police report, and one of the officers instructed Hood about the procedures for filing a criminal complaint against Gallagher. In accordance with DeGennaro's instructions, Mazzolini placed both men on paid suspension pending investigation of the incident. *See* Mazzolini Incident Report; J.A. 417–419.

After Gallagher and Hood left the premises, Mazzolini and DeGennaro spoke again; DeGennaro advised Mazzolini to instruct Hood to report to the airport medical clinic. Because Hood had already left, Mazzolini called him on his home phone and left a message instructing him to report to the clinic. *See* Mazzolini Deposition at 25–26; J.A. 780–781.

After leaving work, Hood went immediately to the Cleveland city prosecutor's office to file a criminal complaint against

Gallagher. *See* Hood Deposition at 19; J.A. 654. He spent several hours at the prosecutor's office and then went home, took two aspirin and took a nap. *See id.* When Hood's wife arrived at home later, she looked at his face and asked him what had happened. She advised him to go to the doctor, and then listened to the message on the answering machine. *See id.* Hood then proceeded to the clinic (also referred to as the "dispensary" or "medical center"), where he was examined by a nurse. After consulting with the attending physician, the nurse prepared a report indicating that Hood suffered from a contusion on his right jaw, and prescribed ice and ibuprofen. *See* Crystal Dunstan Deposition at 34; J.A. 851, and Exhibit A thereto; J.A. 855–857.

On behalf of Continental, DeGennaro began his internal investigation on September 18, 1998. Upon arriving in Cleveland, DeGennaro first spoke with Mazzolini, then Hood, and then he spoke with Gallagher. *See* DeGennaro Deposition at 20–27; J.A. 584–591. At the time of this conversation, Gallagher was accompanied by his employee representative, James Anderson ("Anderson"). *See id.* DeGennaro reviewed the police report, and the medical records from the clinic. See *id.* After considering all the relevant evidence, DeGennaro concluded that Hood's story was credible, and that Gallagher had, in fact, struck Hood in the face on the morning of September 16, 1998. As a result, Mazzolini and DeGennaro agreed that Gallagher's employment with Continental Airlines must be terminated pursuant to Continental's "zero tolerance" policy for workplace violence. *See* DeGennaro Deposition at 33–34, 39–43; J.A. 597, 598, 603–607.

The employment of Continental's Material Services employees is governed both by Continental's "Working Together Guidelines" and the "Technical Operations Employment Policy," commonly referred to as "TOP." *See id* at 10–13; J.A. 574–577. TOP provides for an appeal process for matters involving proper application of Company policy or discipline. In cases involving the termination of an employee, the process begins with a Step Two appeal. *See* TOP 19–2; J.A. 435. The Step Two appeal involves a hearing before a Local Appeal Committee, a group of employee representatives, and a group of local management representatives. *See id.*

Gallagher's employee representative, Anderson, submitted a request for an appeal of Gallagher's termination. *See* Anderson Deposition at 209; J.A. 563. On October 12, 1998, an appeal hearing was held in Mazzolini's office before Frank Eliano ("Eliano"), who was Senior Manager in the Material Services Department. After considering Mazzolini's incident report, DeGennaro's investigation report, the police report, Hood's medical records, and the statements of Anderson (who presented the case on behalf of Gallagher), Eliano upheld Mazzolini's termination decision.

Anderson then submitted a request for a Step Three appeal on behalf of Gallagher. Prince Anderson and James Cherry of the System Council, a group of employees elected by the employees as a whole to serve as their representatives in communicating with senior management, flew to Cleveland and met with Gallagher in preparation for the Step Three appeal hearing. After meeting with Gallagher and Jim Anderson, Prince Anderson and James Cherry decided that it would not be in Gallagher's best interest to attend the Step Three appeal hearing. *See* Prince Anderson Affidavit; J.A. 394–395. On December 3, 1998, a Step Three appeal hearing was held in Houston, Texas in accordance with the procedure outlined in TOP. At that hearing, Gallagher's interests were

represented by Prince Anderson, James Cherry, and James Mock of the System Council. *See id.* After considering the evidence presented, the decision to terminate Gallagher's employment was upheld by Rodney Cox, Director of Human Resources.

TOP provides that if the System Council Appeal Committee is not satisfied with the decision of the Step Three appeal, they can present the case for arbitration. The System Council made the decision not to appeal Gallagher's termination through arbitration. *See id.*

## II. ANALYSIS

### A. Standard of Review

This Court's review of the decision to grant summary judgment is *de novo*. *See Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 543 (6th Cir.1996). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

### B. Gallagher's Discrimination Claim

Gallagher alleges that Continental's conduct violated the State of Ohio's race discrimination statute, ORC § 4112.02(A). The analysis for claims under the Ohio employment discrimination statute is identical to that for Title VII claims. *See Barnes v. GenCorp, Inc.*, 896 F.2d 1457 (6th Cir.1990).

Since Gallagher alleges a disparate treatment[1] case against Continental, this case is subject to the following analysis:

1) Gallagher must establish a *prima facie* case of discrimination

2) Continental must then offer evidence of a legitimate, nondiscriminatory reason for its actions

3) Gallagher must prove that the reason offered is in fact a pretext for intentional discrimination.

*See Kent County Sheriff's Ass'n v. County of Kent*, 826 F.2d 1485, 1492 (6th Cir.1987).

An aggrieved party can prove a *prima facie* case through circumstantial evidence showing:

1) he is a member of a protected group

2) he was subject to an adverse employment decision

---

1. Gallagher primarily alleges that Continental treats its Caucasian employees more harshly in its disciplinary decisions than it treats its African–American employees.

3) he was qualified for the position, and 4) he was replaced by a person outside the protected class.

*See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

This Circuit has held that in cases of reverse discrimination, a plaintiff who is a member of a majority group is held to a heightened standard in proving a prima facie case, i.e., that such a plaintiff must also show that his or her employer is "the unusual employer that discriminates against the majority." *See Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67–68 (6th Cir.1985). Consideration of the heightened standard in not necessary in this case because Gallagher fails with respect to other essential elements; even assuming that Gallagher could establish a prima facie case, Continental has established a legitimate non-discriminatory reason for its actions which Gallagher has failed to rebut.

■ Continental presented substantial evidence that Gallagher's termination was based on its policy of zero tolerance for workplace violence. Gallagher attempted to rebut this legitimate non-discriminatory reason by showing that he was treated differently from other similarly situated employees. This Court explained in *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) that "[i]t is fundamental to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated in all respects." *Mitchell,* 964 F.2d at 583. Further ",to be deemed 'similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circum-stances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Applying that standard, the district court correctly concluded that Gallagher's allegations fail to identify similarly situated non-protected employees who engaged in similar conduct and were treated differently. Two of the people identified by Gallagher (Tom Lovett and Bill Rice) had different supervisors than Gallagher, and indeed, both of these employees are Caucasian. Therefore, they cannot be considered similarly situated non-protected employees for purposes of Gallagher's case. Gallagher provides additional examples of employees who were involved in an altercation but not fired (Jim Hosta and Keith Patterson), yet both of these employees are also Caucasian, and so do not support Gallagher's case.

Floyd Lumpkin is African–American employee who allegedly brought a gun to work yet was not disciplined. However, he reported to a different supervisor than Gallagher. Thus Mr. Lumpkin is not similarly situated to Gallagher, and furthermore the conduct in question is dissimilar as well. Shannon Westbrooks, an African–American employee who engaged in a fight and was terminated, yet later reinstated through the appeals process, was not established by Gallagher to be similarly situated. Gallagher did not establish that Westbrooks reported to the same supervisor, and indeed, Westbrooks was subject to the same discipline as Gallagher was; he was terminated.

Gallagher also alleges that he was treated differently from Hood, the man whom Continental concluded Gallagher punched. While it is true that both Gallagher and Hood report to the same supervisor, and are of different races, Gallagher made no allegations that Hood struck him. Thus, it

cannot be said that Gallagher and Hood engaged in the same conduct. Continental concluded that Gallagher struck Hood; Continental did not conclude that Hood ever struck Gallagher. Gallagher's remaining allegations likewise fail to establish disparate treatment. The district court correctly concluded that these defects are fatal to Gallagher's case.

Finally, the district court correctly concluded that Gallagher cannot demonstrate that Continental's stated reason for his termination is pretextual. Continental conducted a thorough investigation which led to a good faith belief that Gallagher had struck Hood. Gallagher's attempt to establish pretext hinges upon the theory that Continental was afraid to discipline Hood out of fear that Hood would institute a discrimination lawsuit of his own. The district court correctly discredited Gallagher's evidence regarding this point.

## C. Violation of Company Policy Claim

■ With respect to Gallagher's claim that Continental failed to follow company policy, the district court correctly observed that "employee manuals and handbooks are usually insufficient, by themselves to create a contractual obligation upon an employer." *Gangasz v. Nordson Corp.,* 68 Ohio App.3d 149, 587 N.E.2d 475 (1991) (quoting *Manofsky v. Goodyear Tire & Rubber Co.,* 69 Ohio App.3d 663, 591 N.E.2d 752 (1990)). Even assuming, *arguendo,* that Continental's TOP policy may be considered a contract, Gallagher has failed to establish that Continental breached the terms of the alleged contract.

Gallagher alleges that Continental breached the TOP agreement by: 1) not allowing him to attend the hearing for the third step of his appeals process; and 2) not considering his prior employment record when making the decision to terminate

him. The third step of the appeals process involves a meeting where the employee's interests are represented by a system appeal committee ("SAC"). In this case, Gallagher's SAC consisted of fellow employees, Prince Anderson and Charles Cherry. Prior to the third appeals hearing, Gallagher's SAC made the decision that it would be in his best interest not to attend the hearing. Continental had no input relative to the SAC's decision that Gallagher not attend the third step appeal, and thus, breached no obligation to Gallagher.

■ Gallagher's second allegation is founded on Continental's policy that states: "discipline shall be applied in a progressive fashion (informal counseling; verbal reprimand; written reprimand; termination warning letter; and termination), *unless the severity of the offense warrants otherwise.*" (emphasis added). Continental has a "zero tolerance" policy for acts of physical violence in the workplace, and it did not breach the TOP policy in terminating Gallagher after concluding that Gallagher struck Hood. Thus, the district court was correct in granting Continental's motion for summary judgment on this claim as well.

## III. CONCLUSION

For the reasons set forth above, this panel **AFFIRMS** the district court's grant of summary judgment.