In re GLOBAL INDUSTRIAL
TECHNOLOGIES, INC.,
et al., Debtors. ₁

Global Industrial Technologies, Inc.,
and Harbison–Walker Refractories
Company, Movants,

v.

Ash Trucking Company,
Inc., Respondent.

No. 02–21626–JFK.

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 2, 2005.

David Ziegler, Esquire, Brian T. Himmel, Esquire, and Lisa Kerszencweig, Esquire, for Movants.

Richard Getty, Esquire, and C. Thomas Ezzell, Esquire, Lexington, KY, for Respondent.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter before the court is the objection of Global Industrial Technologies, Inc. ("GIT") and Harbison–Walker Refractories Company ("Harbison") (collectively the "Debtors") to the unliquidated unsecured claims [2] of Ash Trucking Company, Inc. ("Ash") asserting that the one year statute of limitations provision within the parties' contract bars the claim. Ash argues that the claim is not time barred by the contract because Debtors' bad faith in dealing prevents enforcement of the limitations provisions. Ash also argues that the court should instead use Kentucky's five year statute of limitations because the suit was originally filed there.

We find that the contractual one year limitations clause bars all of Ash's claims with the exception of fraud in the inducement. As to fraud in the inducement, we apply conflict of laws principles of the forum state of the bankruptcy court to determine which state's statute of limitations will govern the dispute. These bankruptcies were filed in the Western District of Pennsylvania. Thus, we rely on Pennsylvania's borrowing statute to resolve any conflict with another state's limitations periods. Pennsylvania selects the shortest period of limitation between conflicting states' statutes of limitations. As a result, we must apply Pennsylvania's two year statute of limitations to the fraud in the inducement claim which is time barred by that statute. Therefore the Debtors' objection will be sustained. The facts are as follows.

## BACKGROUND

GIT is a Delaware corporation with a primary base of operations in Texas. GIT controls and operates Harbison as a subsidiary. Harbison is a Delaware corporation with primary operations in Pennsylvania. Harbison was formerly known as Indresco. Harbison operated an equipment mining division, Jeffrey Division, Indresco, Inc. ("Jeffrey"), based in Ohio.[3] Objection to Claim, Doc. No. 2484, at ¶ 6. Harbison's control and operation of Jeffrey started in 1992. Jeffrey's business included manufacturing and selling the 102 HP Continuous Miner (the "102 Miner"). The 102 Miner is a full seam ripper continuous miner that uses non-oscillating rotary cutters to rip down the mine seam to reach the mine floor. The 102 Miner was marketed primarily to mining enterprises in several states, including Kentucky. Ash, a mining company based in Kentucky, expressed an interest in acquiring a 102 Miner from Jeffrey. Jeffrey, in turn, presented a sales proposal to Ash on August 26, 1994. The proposal included specifications of the 102 Miner, the price of $522,170, free spare parts valued at

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. Claim numbers 2804 and 3640 were filed against GIT. Claim numbers 2803 and 3639 were filed against Harbison–Walker.

3. In October of 1995, Harbison sold Indresco Jeffrey Division to Jeffrey Mining Products, L.P. In 1999 Ash commenced an action against, *inter alia,* GIT, Harbison and Jeffrey Mining. Hereafter we use "Jeffrey" to refer to both Jeffrey companies unless otherwise stated.

$12,000, a method of acceptance,[4] and certain terms and conditions. The terms and conditions included two provisions which are at issue in this case. Those provisions are:

**1. GENERAL ...**

**B.** The agreement formed hereby and the language herein shall be construed and enforced under the Uniform Commercial Code as in effect in the State of Ohio on the date hereof.

**5 WARRANTY AND LIMITATION OF REMEDY AND LIABILITY ....**

**(c)** THE FOREGOING IS SELLER'S [Debtors'] ONLY OBLIGATION AND BUYER'S [Ash's] EXCLUSIVE REMEDY FOR BREACH OF WARRANTY ... THE FOREGOING IS BUYER'S EXCLUSIVE REMEDY AGAINST SELLER FOR ALL CLAIMS ARISING HEREUNDER OR RELATING HERETO WHETHER SUCH CLAIMS ARE BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHER THEORIES .... IN NO EVENT SHALL BUYER BE ENTITLED TO INCIDENTAL OR CONSEQUENTIAL DAMAGES. ANY ACTION BY BUYER ARISING HEREUNDER OR RELATING HERETO, WHETHER BASED ON BREACH OF CONTRACT, TORT,... OR OTHER THEORIES, MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES OR IT SHALL BE BARRED.

*See* Doc. No. 3990, Exhibits to Doc. No. 2484, Amendment Cover Sheet A, at 12, Standard Terms of Sale.

On September 12, 1994, Terry Loving, President of Ash, signed and returned the proposal to Jeffrey. Jeffrey, after receipt of the signed proposal, completed the manufacturing and delivered the 102 Miner to Ash on or about October 5, 1994.

After receipt of the 102 Miner, Ash notified Jeffrey that the 102 Miner was a nonconforming good because it was delivered incomplete and in a state of disrepair. On October 10, 1994, Jeffrey attempted a repair. Shortly thereafter, Ash sent the total payment for the 102 Miner to Jeffrey. In November of 1994, Ash placed the 102 Miner into operation.

After eight months of operation, Ash removed the 102 Miner from use and subjected it to an extensive rebuild in July, 1995. On October 26, 1995, Harbison sold Jeffrey to a separate company, Jeffrey Mining Products, L.P. *See* note 3, *supra.*

Ash filed a complaint in a Kentucky state court on September 30, 1999, seeking rescission of the sales contract alleging fraud in the inducement, bad faith in the fulfillment of the limited remedy clause of the sales contract, and negligence and gross negligence in the manufacture and repair of the 102 Miner.[5] In the alternative, Ash sought damages for breach of contract. The action was removed to the U.S. District Court for the Eastern District of Kentucky based on diversity jurisdiction. The action was stayed when the Debtors filed bankruptcy. Ash then filed a claim in this bankruptcy case. The Debtors have objected to Ash's claim.

---

**4.** The proposal stipulated that final acceptance by Jeffrey required the approval of an authorized representative at the home office of Jeffrey in Ohio before a contract was formed. Doc. No. 3990, Exh. A, at 11.

**5.** Ash named GIT and Harbison in the complaint in addition to Jeffrey and McComb Supply (the supplier of parts used during repairs). The action was commenced almost four years after the sale of the Jeffrey Division.

## DISCUSSION

### I. Choice of Law

The matter at bench requires examination of the laws of three states: Ohio (contract choice of law clause), Kentucky (forum of the original litigation), and Pennsylvania (forum of the bankruptcy court). The court must determine which state's law applies regarding the statute of limitations. In order to do so, the court must also determine what conflict of laws principles should be applied.

The Debtors encourage the court to follow the application of *In re Ateco Equipment, Inc.*, 17 B.R. 230, 232 (Bankr. W.D.Pa.1982), and apply Pennsylvania's conflict of laws principles because Pennsylvania is the forum state of the bankruptcy. The use of Pennsylvania's conflict of laws principles would result in selecting Ohio law in accordance with the express intent of the parties within the terms and conditions section of the parties' contract. *See* Doc. No. 3990, Exh. A, Standard Terms of Sale, at 12, ¶ 1.B. Ash relies on *Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.*, 242 F.Supp.2d 438, 450 n. 8 (W.D.Ky.2003), and argues that because, prepetition, the litigation was commenced in Kentucky, Kentucky conflict of laws principles should be used when a federal court is exercising only diversity jurisdiction.

 Federal courts of appeals have split on whether a bankruptcy court should use the conflict of laws principles of the forum state or those of federal common law. *In re Gaston & Snow*, 243 F.3d 599 (2d Cir.), *cert. denied sub nom. Erkins v. Bianco*, 534 U.S. 1042, 122 S.Ct. 618, 151 L.Ed.2d 540 (2001). Although a bankruptcy court's jurisdiction does not arise by way of diversity, one group of bankruptcy courts looks to federal diversity case law. *Id.* When a federal court acquires jurisdiction via diversity, the substantive law of the forum state is to be applied. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A federal court sitting in diversity must also follow and apply the conflict of laws principles of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

This approach tends to favor the application of *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), so as to apply the forum state's choice of law principles. In *Klaxon*, the U.S. Supreme Court addressed the issue of how federal courts sitting in diversity should select choice of law principles. The Court proceeded to extend *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to the area of conflict of laws on the premise that the uniformity of state systems comes at the expense of creating nonuniformity in the federal system. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. at 496, 61 S.Ct. 1020. This problem, as the Court described, is "attributable to our federal system." *Id.* As a result, each state is free to pursue its own local policies, including the creation of its own conflict of laws principles. In contrast, when the federal court is sitting in diversity, it should not be guided by a need for a uniform federal "general law" of conflict of laws. Without such a uniform general law, "[f]ederal courts are bound by the choice of law rules of the forum state." *In re Goldstein*, 66 B.R. 909, 912 (Bankr.W.D.Pa.1986). Following the *Klaxon* approach in the current case, we must look to the forum state of this bankruptcy court, Pennsylvania, to determine the appropriate conflict of laws principles.

The other approach relies on dicta in *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), *rehearing denied* 329

U.S. 833, 67 S.Ct. 497, 498, 91 L.Ed. 706 (1947),[6] which specifically addressed the selection of conflict of laws principles in a bankruptcy court as distinguished from a court exercising federal diversity jurisdiction. *In re Lindsay,* 59 F.3d 942 (9th Cir. 1995), *cert. denied* 516 U.S. 1074, 116 S.Ct. 778, 133 L.Ed.2d 730 (1996). *Vanston* involved a challenge to a creditor's claim to entitlement to be paid interest on interest under the Bankruptcy Act of 1898. The conflict was between New York (where the bonds had been written, signed, held and paid) and Kentucky (the principal place of business for the group which underwrote the bonds). The Bankruptcy Court for the Eastern District of Kentucky decided that New York law was to be applied. The Court of Appeals for the Sixth Circuit reversed and the U.S. Supreme Court affirmed the Court of Appeals. However the Supreme Court ruled that the bankruptcy court does not apply the law of the state where it sits to determine what claims are allowable and how assets will be distributed. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. at 162–63, 67 S.Ct. 237. "[B]ankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles." *Id.* at 163, 67 S.Ct. 237. The Court, in resolving the issue under equitable principles, discussed the concept of conflict of laws.

The Court stated that "[i]n determining which contact is the most significant in a particular transaction, courts can seldom find a complete solution in the mechanical formulae of the conflict of laws." *Id.* at 161–62, 67 S.Ct. 237. The Court instead

calls upon the "informed judgment" of the judges to balance the interests of all states involved. *Id.* at 162, 67 S.Ct. 237. The call for the use of informed judgment is part of the equitable nature of the bankruptcy court. The use of a strict formula removes equitable consideration and creates a result that may be in conflict with the goals of bankruptcy.

*Vanston* has been used by other courts to reach the conclusion that federal common law conflict of laws principles should be applied by bankruptcy courts, rather than those of the forum state. In some circuits, federal common law conflict of laws principles incorporate the Restatement (Second) Conflict of Laws. *See, e.g., In re Miller,* 292 B.R. 409, 413 (9th Cir. BAP 2003).

■ In the instant case there is no difference in the outcome whether the court applies federal common law or Pennsylvania conflict of laws principles because both cite to the Restatement (Second) Conflict of Laws. "Both Pennsylvania law and the Restatement of Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law." *Assicurazioni Generali, S.P.A. v. Clover,* 195 F.3d 161, 164 (3d Cir.1999). In this case, in provision 1.B of the Standard Terms of Sale, the parties expressly stated their intent to apply Ohio law in construing and enforcing the contract. Doc. No. 3990, Exhibits to Doc. No. 2484, Amendment Cover Sheet A, at 12, Standard Terms of Sale. Section 187(2) of the Restatement (Second) Conflict of Laws provides that the law chosen by the parties generally will govern unless:

---

**6.** To the extent the substantive legal issue (i.e., payment of interest on interest) was addressed in *Vanston,* the analysis has been superceded by the 1978 Bankruptcy Code. *In re Sublett,* 895 F.2d 1381 (11th Cir.1990).

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

## (1) Was There a Substantial Relationship Between the Parties and the Chosen Forum

■■■ At the time of the transaction, Jeffrey was located in Ohio, the sales contract was completed in Ohio, and Ash was aware that it was dealing with a company based in Ohio. Thus, it was reasonable for Jeffrey to select Ohio law for the interpretation and enforcement of its sales contracts. Ash asserts that none of the current parties had substantial existing relationships with Ohio and as a result its laws should not apply. However, contract construction principles require the court to look to the moment of formation of the contract to determine the intent of the parties. In addition, Ash signed the contract knowing that it included the express choice of law provision. There was a substantial relationship between the parties and Ohio at the time of formation of the original contract because one of the parties, Jeffrey, was based there.

## (2) Would Application of the Law of the Chosen State Be Contrary to a Fundamental Policy of a State With a Greater Interest?

■■■ Ash contends that the Kentucky courts would ignore the parties' choice of law and apply Kentucky law because of a conflict with a fundamental policy of the State of Kentucky. Ash argues that Kentucky would seek to enforce its five year of statute of limitations. As a result, Ash contends that Ohio's four year limitation and the contract's one year limitation would be in conflict with Kentucky's fundamental policy of protecting parties from an oppressive use of superior bargaining power. Ash relies on *Breeding v. Massachusetts Indem. and Life Ins. Co.*, 633 S.W.2d 717 (Ky.1982). However, years later, in *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382 (6th Cir.2000), the court applied § 187 of the Restatement (Second) Conflict of Laws noting that, although *Breeding* did not cite to § 187, its analysis touched § 187. Thus, *Wallace Hardware* concluded that Kentucky would choose § 187 as its analytical framework with respect to choice of law clauses.[7] "The fact ... that a different result might be achieved if the law of the chosen forum is applied does not suffice to show that the foreign law is repugnant to a fundamental policy of the forum state." *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d at 399, quoting *Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 740 (6th Cir.1999). The primary purpose of the fundamental state policy exception is "designed to protect a person against the oppressive use of supe-

7. *Breeding* involved a party who purchased insurance while renting a car without ever negotiating, viewing or receiving the contract which included the choice of law provision. As a result, the court ruled that the choice of law provision was not applicable and that Kentucky law would govern. In *Wallace Hardware,* the court distinguished *Breeding* from other cases where capable parties dealing at arm's length and with equal bargaining power negotiate a choice of law provision. In the case of a negotiated choice of law provision of this sort, the court will recognize the parties' choice if the requirements of § 187 are satisfied.

rior bargaining power." *Wallace Hardware*, 223 F.3d at 399, quoting Restatement (Second) Conflict of Laws, § 187 comment g.

Ash asserts that the contract is one of adhesion, but there is nothing in the record that supports this assertion. To the contrary, the record establishes that both parties were equally situated and sophisticated businesses that, at arm's length, negotiated and entered into a contract worth more than a half-million dollars. Ash accepted the contract after a period of time to consider the proposal. Nothing in the facts suggests that this is either a contract of adhesion or a situation of superior bargaining power. As such, the difference of a year in a statute of limitations between the states is not contrary to Kentucky's fundamental public policy of protecting a party from oppressive use of superior bargaining power. Restatement (Second) Conflict of Laws § 187(2) does not bar use of the parties' negotiated choice of law. Here, both federal and Pennsylvania law would respect the parties' agreement to apply the law of Ohio.

## II. Time Limitation Provision

 The first issue to be considered under Ohio law is the limitations period in Section 5(c) of the parties' contract; i.e., one year for breach of contract, tort, and other actions. An Ohio case has noted that Ohio has no law prohibiting contracting parties from limiting the time in which any suit may be brought even if it is shorter than the state's statute of limitations. *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 710 (6th Cir.1992). The contractual limitations period will be upheld by the court as long as its terms are reasonable. *Id.* at 709. Ash does not allege, nor do the facts show, that the limitation in Section 5(c) of the sales contract is unreasonable. The provision is merely incon-

venient to Ash's claim. In addition, Ash provides no justification for the more then four year delay in the filing of its suit. As a result, we determine that the one year limitation is reasonable. All claims, except for fraud in the inducement, as will be discussed below, are barred by the contractual one year limitation in Section 5(c) of the parties' contract.

## III. Fraud in the Inducement

 Ash argues that in a case of fraud in the inducement the choice of law provision is voidable along with the rest of the contract. Fraud in the inducement exists when a defendant makes a "knowing, material misrepresentation with the intent of inducing the plaintiff's reliance and the plaintiff relied on the misrepresentation to [its] detriment". *Beatley v. Beatley,* 160 Ohio App.3d 600, 828 N.E.2d 180, 189 (10 Dist.), *appeal not allowed* 835 N.E.2d 383, 2005–Ohio–5146, 106 Ohio St.3d 1534 (Ohio, Oct. 15, 2005), TABLE, 2005–1009 (Text Not Available on Westlaw). "A claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection or choice of law clause found in that contract. Rather, it is the inclusion of those specific clauses plaintiffs seek to avoid that must have been induced by fraud." *Stamm v. Barclays Bank of New York*, 960 F.Supp. 724, 729 (S.D.N.Y. 1997). Ash does not assert anywhere nor allege facts indicating that the choice of law provision, specifically, was induced by fraud. As a result, the contractual selection of Ohio law will be used to determine whether Ash may rescind the contract based upon fraud in the inducement. With regard to the fraud in the inducement claim, the Debtors argue that Ohio law permits the enforcement of the one year limitation or, in the alternative, that Ohio's statute of limitations period for fraud applies.

When a contract is allegedly the result of fraud in the inducement, the defendant may not use provisions from the contract in its defense. *Invacare Corp. v. Sperry Corp.*, 612 F.Supp. 448, 451 (N.D.Ohio, 1984). The Debtors would like the court to do just that, use a provision from a contract allegedly induced by fraud to bar Ash's claim. The requested outcome, by its very nature, is unfair. As a result, the one year limitation in provision 5(c) will not be applied to bar Ash's fraud in the inducement claim. Therefore, we evaluate the Debtors' alternative argument for the application of Ohio's four year statute of limitations.

Section 1.B of the contract provides that the contract be construed and enforced under the UCC as applied in Ohio. A plain reading of the choice of law provision reveals no reference to the inclusion of the procedural laws of Ohio or, specifically, Ohio's statute of limitations. Absent a specific inclusion of Ohio's statute of limitations in the contract, the choice of law clause will not be extended to incorporate it. *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir.1994).

Ash argues that Kentucky's five year statute of limitations applies because suit was filed in Kentucky. The court must again turn to conflict of laws principles to determine the appropriate state's statute of limitations. The majority of courts, as discussed earlier, built their analyses of conflict of laws principles on the foundation of federal diversity. Federal courts in diversity actions apply the forum state's statute of limitations. *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, *rehearing denied* 326 U.S. 806, 66 S.Ct. 7, 90 L.Ed. 491 (1945).

In the case at bar, Pennsylvania, not Kentucky, is the forum state. Pennsylvania generally will apply its own statute of limitations, but when a cause of action arose in another forum, the court will look to Pennsylvania's borrowing statute. *Prince v. Trustees of University of Pa.*, 282 F.Supp. 832 (E.D.Pa.1968). Under Pennsylvania's borrowing statute, 42 Pa.C.S.A. § 5521, the court will use the statute of limitations that is the shorter between the law of the state of the action and the Commonwealth of Pennsylvania. 282 F.Supp. at 839. Because the parties allege that the action at hand involved either Ohio or Kentucky, the court will compare the limitations provisions of Ohio, Kentucky, and Pennsylvania (as the forum state), as required by Pennsylvania's borrowing statute, to the claim of fraud in the inducement. The court does not, by this comparison, rule that, in this case, Ohio's statute is irrelevant to Pennsylvania's borrowing statute, which compares its period with that of the state of the action (Kentucky).

In Pennsylvania, 42 Pa.C.S.A. § 5524(7) creates a limitation of two years for claims of fraud. Ohio limits the time to file an action for fraud to four years. Ohio Rev. Code § 2305.09(C). Finally, Kentucky has a limitations period of five years for fraud claims. Ky.Rev.Stat. § 413.120(12). Applying Pennsylvania's borrowing statute, the court is to select and apply the shortest period under the three statutes. Pennsylvania's two year limitation is the shortest and, therefore, prevails. With the use of Pennsylvania's two year statute, Ash's claim for fraud in the inducement is time barred.

## Conclusion

The Debtors' objection to Ash's claim will be sustained. The claim of fraud in the inducement is time barred. Pennsylvania's borrowing statute compels the use of Pennsylvania's two year statute of limitations for fraud claims. All additional

claims raised by Ash are time barred by the mutually agreed upon one year limitation in Section 5(c) of the parties' contract.